Charles P. Maher, State Bar No. 124748
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
Telephone No.: 415.356.4600
Fax No.: 415.356.4610
E-mail: cmaher@luce.com

Counsel for Timothy W. Hoffman
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| In re GERARD Q. DECKER, IV aka ROD DECKER, <br><br>Debtor. | Case No. 09-10655 AJ<br>Chapter 7<br><br>Date: April 30, 2010<br>Time: 9:00 a.m.<br>Place: 99 South "E" Street, Santa Rosa<br>Court: Hon. Alan Jaroslovsky |
|---|---|

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SURCHARGE OF EXEMPTION

John W. Richardson, Trustee in Bankruptcy of the estate of the above Debtor, files this memorandum of points and authorities in support of his motion for an order surcharging the Debtor's $17,225 exemption asserted in a 33-foot Sea Ray power boat (the "Power Boat").

I.  STATEMENT OF FACTS

Gerard Decker filed a voluntary petition for relief *pro se* on March 16, 2009. The Debtor neglected to inform the Trustee that the holder of the first deed of trust against his residence (the real property commonly known as 2030 Paradise Drive, Tiburon, California) had recorded and served a notice of default and then a notice of sale before the Debtor filed his Chapter 7 petition.

The Trustee proceeded to collect assets for liquidation. The Debtor asserted that there was sufficient equity in the real property to make the sale of other assets unnecessary. Although the Trustee's proposed broker believed that the value of the real property was significantly less than the Debtor asserted and the property was over-encumbered, the Trustee was willing to use another

broker to market the property for a time to determine whether it could be sold for a higher amount.

When the holder of the first deed of trust moved the Court for an order granting it relief from the automatic stay, it misrepresented to the Trustee that it had not recorded a notice of default before the Chapter 7 petition was filed, inducing the Trustee to believe that the creditor was seeking relief to commence the foreclosure process. Because the Trustee had serious doubts about the realizable value, he believed that four months would give him enough time to test the market, and did not oppose the motion. The Debtor did not bother to inform the Trustee that a notice of default had been recorded before he filed his Chapter 7 petition. In fact, the creditor had recorded a notice of default and proceeded to record a notice of sale. A trustee's sale was held within a few weeks after the relief from stay hearing. Because the foreclosure price was so low (even less than the Trustee's proposed broker estimated), the Trustee concluded that there was no damage to the estate, and abandoned any claims against the lender.

With the loss of the real property, the Trustee resumed his effort to liquidate other assets.

The Debtor hired counsel and amended his schedules to, among other things, reduce the fair market value of a 33-foot Sea Ray power boat from $55,000 to $35,000, and assert a $17,225 exemption in it under C.C.P. Section 703.140(b)(1) and (5). There were no grounds on which to object to that exemption.

By letter dated September 23, 2009, the Trustee requested that the Debtor surrender the 33-foot Sea Ray power boat and certain other assets. Exhibit A to the Declaration of Charles P. Maher. By order dated September 29, 2009, the Court ordered the Debtor to surrender the 33-foot Sea Ray power boat and other assets to the Trustee pursuant to 11 U.S.C. § 521(a)(4) within 10 days. Maher Declaration, Exhibit B. The Debtor did not comply.

By letter dated October 14, 2009, to the Debtor, the Trustee noted his failure or refusal to comply with the order, and gave the Debtor another opportunity to voluntarily surrender the power boat and other assets. Maher Declaration, Exhibit C. Eleven days later, counsel for the Trustee received an e-mail from an attorney who had made an appearance on behalf of the Debtor. In the e-mail, the attorney represented that the Debtor was formulating an offer to purchase the non-exempt equity in the power boat, but would cooperate with the surrender of another boat and a

Ford Thunderbird. Declaration of Charles P. Maher, Exhibit D.

Counsel for the Debtor continued to represent that the Debtor intended to make an offer for the non-exempt equity in the power boat. The Trustee believes counsel's representations were sincere. E-mails were exchanged through January 22, 2010, at which point, the Trustee concluded that the Debtor did not intend to make an offer. Authentic copies of e-mails from counsel are attached to the Maher Declaration as Exhibits E, F, and G.

With the Debtor's failure to make an offer, the Trustee contacted his auctioneer to begin the process of an auction. Counsel for the Trustee served notice of the auction on March 5, 2010. Maher Declaration, Exhibit H. On the last day for filing and serving objections, the Debtor requested a hearing on the proposed sale. Based on the "letter objection" filed the same day but previously sent to the Trustee, it is clear that no offer for purchase of the non-exempt equity will be forthcoming. The hearing on the objection is set for April 9, 2010.

During the period the Trustee was waiting to receive an offer from the Debtor, the Debtor failed to pay the $400 per month slip fee, thereby creating a Chapter 7 administrative debt in the amount of $2,404 as of March 1, 2010. Adding another $400 for April, the debt is $2,804. Maher Declaration, Exhibit I. Had the Debtor made an offer in October 2009, as his counsel indicated he would do, the Trustee would not have incurred any slip fees because he would have required the Debtor to pay any such fees in addition to the purchase price. The Debtor also has not paid anything for his use of estate property since the Trustee made demand for surrender on September 23, 2009.

II. ARGUMENT

The Trustee is seeking an order surcharging the Debtor's exemption for the slip fee, for nominal rent of $400 per month, and the legal fees incurred by the estate in response to the Debtor's refusal to surrender the Power Boat to the Trustee.

There is no express statutory authority for surcharging a debtor's exemption. However, the Ninth Circuit made clear in *Latman v. Burdette*, 366 F. 3d 774 (9th Cir. 2004), that a bankruptcy court is vested with authority under its general equitable powers to surcharge an exemption to prevent fraud on the court.

> We hold that the bankruptcy court may equitably surcharge a debtor's statutory exemptions when reasonably necessary both to protect the integrity of the bankruptcy process and to ensure that a debtor exempts an amount no greater than what is permitted by the exemption scheme of the Bankruptcy Code.

*Latman*, 366 F.3d. at 786.

In *Latman*, the debtors filed a Chapter 13 petition which they voluntarily dismissed after about three months. Four days after dismissal of the Chapter 13 petition, the debtors filed a Chapter 7 petition. During the four-day interval, the Latmans sold a vehicle and a boat and received $8,500 in cash for them. On their Schedule B in the Chapter 7 case, the Latmans omitted all of the proceeds of sale of these two items and, instead, listed only $1,500 in cash.

The trustee in *Latman* requested that the Latmans account for the proceeds of sale. The Latmans gave an inaccurate accounting. The Trustee filed an action for denial of the discharge and obtained a judgment denying the discharge on summary judgment. Subsequently, the trustee filed a motion to surcharge the debtor's exemptions to the extent of the loss of value of estate property and for turnover of property. Specifically, the trustee sought to surcharge the wildcard exemption, thereby rendering non-exempt certain assets the Latmans had previously exempted. The bankruptcy court granted the trustee's motion.

> The surcharge remedy fashioned by the bankruptcy judge prevented what otherwise would have been a fraud on the bankruptcy court and the Latmans' creditors caused by the Latmans' non-disclosure of monies that should have been listed on the bankruptcy schedules and available for the Latmans' creditors.

*Latman*, 366 F. 3d at 785.

The Latmans argued that the surcharge was inconsistent with their fresh start. The Ninth Circuit rejected the argument, stating that the surcharge remedy did not punish the Latmans by denying them the full value of their statutory exemptions. "Instead, the surcharge remedy protected the Latmans' creditors by preventing the Latmans from sheltering *more* assets than permitted by 11 U.S.C. § 522." *Id.*

The Ninth Circuit explained that the surcharge remedy ensured that the Latmans retained only the full permitted value of their exemptions and nothing more.

> Under exceptional circumstances, such as those presented here, surcharge may be the only means fairly to ensure that debtors retain their statutory "fresh start," while also permitting creditors access to property in excess of that which is properly exempted under the bankruptcy code.

*Latman*, 366 F. 3d at 786.

The Bankruptcy Appellate Panel took the analysis one step further in *In re Onubah*, 375 B.R. 549 (9th cir. BAP 2007). In *Onubah*, the debtor disrupted the Chapter 7 trustee's efforts to sell real property which the debtor maintained as his residence. "Onubah's efforts to obstruct the sale, while unsuccessful, caused the bankruptcy estate to incur significant expenses."

> Although Onubah did not intend to keep assets by concealing them from the Trustee, his misconduct was to the same end. Even though he disclosed his residence, Onubah refused to turn it over so the Trustee could sell it and realize the non-exempt equity for the benefit of creditors. He sought to keep that non-exempt equity for himself.

*Onubah*, 375 B.R. at 554.

> A surcharge of exemptions does not hinge on the concealment of assets. It requires misconduct that would cause "fraud on the bankruptcy court and the [debtor's] creditors." *Latman*, 366 F. 3d. at 785. This may include concealment of assets, but is not limited to such cases. An unjustified refusal to turn over property of the estate to the trustee may be the basis for surcharge of the debtor's exemptions. *Latman* 366 F. 3d. at 785 (citing *In re Ward*, 210 B.R. 531, 532 (Bankr. E.D. Va. 1997)).

*Onubah*, 375 B.R. at 554.

Before the Debtor's residence was lost to foreclosure, the Debtor asserted that the net equity in it was sufficient to pay all creditors in full, making unnecessary a sale of any other assets, including the Power Boat. When it became obvious that sale of the Power Boat, a sail boat, and a vehicle would be necessary, the Debtor did not voluntarily turn them over to the Trustee, instead requiring the Trustee to obtain an order compelling the Debtor to comply with his statutory obligation to surrender property to the Trustee under 11 U.S.C. § 521(a)(4). The Debtor did not comply with the order.

It was only when the Trustee made an issue of the non-compliance and the Debtor involved an attorney that the Debtor began his series of promises to make an offer to the Trustee

to purchase the non-exempt equity in the Power Boat from the estate. He did surrender the other boat and the vehicle, which the Trustee sold, but never made an offer for the Power Boat.

When, after approximately four months of promises, the Debtor failed to present any offer, the Trustee concluded that the Power Boat also had to be auctioned. In response to the Trustee's sale notice, the Debtor filed an objection, not because he was ready to make an offer to purchase the non-exempt equity, but to appeal to the Court for an unwarranted exception to Chapter 7 liquidation. The Debtor is not entitled to exempt the boat itself and did not attempt to do so in his Amended Schedule C when he asserted a $17,225 exemption in a $35,000 asset.

The Trustee expects to sell the Power Boat and pay the exemption (in the amount allowed) from the proceeds of sale.

Despite the Trustee's accommodation of the Debtor in providing him time in which to formulate an offer to purchase the non-exempt equity, the Debtor stopped paying the $400 monthly slip fee where the Power Boat was stored, resulting in a loss at this time of $2,400 to the estate. Had a sale taken place in October 2009 when the Debtor first promised he would make an offer, the Debtor would have been liable for those monthly fees, not the estate. It is unfair to the estate that it must pay those fees when the Debtor has, in effect, forced the estate to incur debt for his benefit only. The Trustee believes that a surcharge for all slip fees while the Debtor is in possession of the Power Boat is appropriate. The Debtor should also be liable for nominal rent of $400 for use of the boat since September 23, 2009, when the Trustee requested turnover.

The Debtor's delays, his refusal to surrender the Power Boat, his broken promises, and what the Trustee believes is a bad faith objection to the sale have forced the Trustee to incur attorney fees and costs. The Trustee believes it is appropriate to surcharge the Debtor's exemption in the boat for an amount equivalent to the fees.

As the *Onubah* court stated, an award of attorney fees is consistent with the "American Rule," under which attorney fees are not recoverable unless provided for by a contract or a statute, or under an exception to the American Rule such as "when a losing party acts in bad faith." *Perry v. O'Donnell*, 759 F. 2d. 702, 704 (9th Cir. 1985). ["We conclude that the bankruptcy court did not abuse its discretion or misapplied the law when it awarded attorney fees as part of the surcharge of

Onubah's exemptions."] *Onubah*, 375 B.R. at 557.

Counsel for the Trustee spent .9 hours ($436.50) preparing the application for an order under Section 521, 2.4 hours ($1,176) preparing documents in reply to the Debtor's objection to the sale and, as of the date of this memorandum, 2.4 hours ($1,176) in preparing this motion. Declaration of Charles P. Maher, ¶ 10.

III. CONCLUSION

The Trustee asserts that a surcharge of the Debtor's exemption for $2,804 in unpaid slip fees, $2,400 in rent, and $2,788.50 in attorneys fees required in replying to the Debtor's objection to the sale of the Power Boat and in bringing this motion should be granted.

DATED: April 2, 2010  LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: /s/ Charles P. Maher
CHARLES P. MAHER
Counsel for Timothy W. Hoffman, Trustee

301167878.1